UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

MARY P. BLACK,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CAUSE NO. 4:22-CV-49 DRL-JEM

OPINION AND ORDER

Mary P. Black appeals the Social Security Commissioner's final judgment denying her disability insurance benefits. She requests either a finding of disability based on the evidence or remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court vacates the administrative decision and remands for further proceedings.

BACKGROUND

Ms. Black suffers from a variety of impairments, including degenerative disc disease of the cervical spine, coronary artery disease, degenerative joint disease to the right shoulder with residuals from an arthroscopic labrum repair, depression, and anxiety [R. 565]. She filed an application for disability benefits on January 14, 2011 [R. 579]. She alleges her disability onset date was May 10, 2011 [R. 563].[1] Ms. Black was 49 years old on the alleged onset date [R. 568]. She has a high school education and past relevant work as a traffic clerk, general clerk, and waitress [R. 578].

Her application was originally denied on March 17, 2011 and again on reconsideration on May 4, 2011 [R. 11]. An administrative law judge (ALJ) denied her petition on July 3, 2012 [R. 22]. After a remand

---

[1] Ms. Black originally alleged an onset date of December 12, 2008, but she thereafter amended the date to May 10, 2011 [R. 563].

by the district court on March 3, 2015, the ALJ denied Ms. Black's petition again on September 27, 2017 [R. 562]. The Appeals Council remanded the matter, so the ALJ reconsidered the petition and held a hearing on May 26, 2020 [R. 562]. In an August 31, 2020 decision, the ALJ denied her petition on the basis that there were sufficient jobs in the national economy that she could perform considering her age, education, work experience, and residual functioning capacity (RFC) [R. 578]. She challenged the decision. After the Appeals Council denied her request on May 16, 2022 [R. 552], she appealed here.

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [his] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (quotation omitted). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). This high deference is lessened whenever the ALJ's findings are built on errors of fact or logic. *Thomas*, 745 F.3d at 806.

## DISCUSSION

An individual is disabled when she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months."

2

42 U.S.C. § 423(d)(1)(A). This impairment must be so severe that the individual "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A).

When considering a claimant's eligibility for disability benefits, an ALJ must apply a standard five-step analysis, asking whether (1) the claimant is currently employed; (2) the claimant's impairment or combination of impairments is severe; (3) her impairments meet or exceed any of the specific listed impairments that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) the claimant can perform her former occupation, if the impairment has not been listed as conclusively disabling, given the claimant's residual functioning capacity (RFC); and (5) the claimant can perform other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

At step one, the ALJ determined that Ms. Black had not engaged in substantial gainful activity during the relevant period, so proceeded to step two [R. 565]. There the ALJ determined that Ms. Black had a number of severe impairments, including degenerative disc disease of the cervical spine, coronary artery disease, degenerative joint disease to the right shoulder with residuals from an arthroscopic labrum repair, depression, and anxiety [R. 565]. At step three, the ALJ decided that these impairments failed to meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [R. 566].

Thus, the ALJ proceeded to step four and there concluded that Ms. Black had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to certain modifications [R. 568]. Relevant here, the administrative decision concluded that Ms. Black could stand or walk four hours in an eight-hour

3

workday, that she could occasionally reach overhead with her right arm and frequently reach in all other directions, and that she could frequently handle and finger [R. 568].

Finally, at step five, the ALJ considered the claimant's age, education, work experience, and RFC to conclude that there were 287,000 jobs nationally that Ms. Black could perform: hand packager/inspector (87,000), small product assembler (115,000), and mail clerk (85,000) [R. 579]. Based on this analysis, the ALJ concluded that Ms. Black wasn't disabled [R. 579].

Ms. Black raises several issues on appeal: (1) the ALJ operated under an evidentiary deficit by dismissing all available medical opinion evidence, (2) the ALJ improperly weighed an opinion by Dr. Stephen Genest, (3) the ALJ failed to construct a logical and accurate bridge from the evidence to several limitations in the RFC, and (4) the ALJ improperly assessed the intensity, persistence, and limiting effects of her subjective limitations.

Ms. Black first argues that the ALJ's decision in whole should be viewed through the lens of an evidentiary deficit because the ALJ rejected all available medical opinions. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). When an ALJ rejects the available medical opinion evidence, she leaves an "evidentiary deficit," though the rest of the record may still support the ALJ's residual functioning capacity determination. *Suide v. Astrue*, 371 F. Appx. 684, 690 (7th Cir. 2010).

Ms. Black doesn't argue that the ALJ improperly weighed the various medical opinions, save for one opinion from Dr. Genest. She notes that the ALJ gave little weight to Dr. Genest's opinion that Ms. Black could perform sedentary work and the state agency medical consultants' opinions in whole [R. 575-576]. Ms. Black thus argues that the ALJ rejected all available medical opinion evidence, meaning that the entire decision should be viewed through the lens of an evidentiary deficit. But not so—the ALJ afforded weight to medical opinion evidence, not entirely disregarded all of it.

4

For instance, the ALJ gave "significant weight" to Dr. Dean Shoucair's opinion that Ms. Black had the ability to sit, stand, walk, handle objects, hear, see, and speak [R. 572]. The ALJ also gave "great weight" to Dr. Richard Cohen's opinion that Ms. Black could perform simple, routine, and repetitive tasks with a restriction on piece rate and time work, observing that she could meet end of the day goals and tolerate occasional interaction with the public, supervisors, and coworkers [R. 576]. The court thus does not view the ALJ's decision in whole through the lens of an evidentiary deficit, but rather addresses each of Ms. Black's arguments in its individual context.

Ms. Black next challenges the ALJ's assessment of one opinion by Dr. Genest. Ms. Black filed her claim before March 27, 2017, so the evaluation of medical opinions is governed by 20 C.F.R. § 404.1527. This regulation requires the ALJ to evaluate every medical opinion through certain factors. 20 C.F.R. § 404.1527(c). The factors include the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors that may be brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(1)-(6). Here, as in all parts of the administrative decision, the ALJ must build a logical and accurate bridge between the evidence and the conclusions to enable meaningful review. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). An ALJ isn't required to consider every piece of evidence, but the administrative decision cannot ignore contrary lines of evidence or cherry-pick evidence. *See Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).

Ms. Black argues that the ALJ didn't provide an adequate explanation for why the ALJ gave little weight to Dr. Genest's opinion that she should be limited to sedentary work rather than light work, contra the ALJ's ultimate finding. Dr. Genest is a neurosurgeon with over 60 years of experience in the field [R. 2359-70]. He served as an impartial medical expert at Ms. Black's ALJ hearing, not a treating physician [R. 562]. He reviewed all of Ms. Black's impairments and offered several opinions [R. 600], including that the combination of her impairments limited her to a sedentary workload [R. 613-14].

5

Ms. Black contests two primary reasons the ALJ gave to justify extending Dr. Genest's opinion little weight. In fairness, the Commissioner offers the court nothing on this front to defend the administrative decision; instead, it merely languishes in one sentence to say "the ALJ fully discussed the opinion evidence and explained her basis for giving each opinion the weight that she did" [23 at 5]. Such an undeveloped conclusion isn't an argument at all. Without a helpful defense, the court turns to the two issues raised by Ms. Black—and then addresses two of its own.

First, the administrative decision cites Ms. Black's search for clerical or office work post-disability as a reason to discredit Dr. Genest [R. 575], but it never explains why this is inconsistent with a sedentary work limitation. Ms. Black's pursuit of clerical or office work could have encompassed sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."). With this, the administrative decision cites Ms. Black's receipt of unemployment benefits, but why this opposes a sedentary work limitation one can only guess.

Second, the administrative decision says Dr. Genest's opinion should be given little weight because Ms. Black performed heavy yardwork post-disability [R. 572, 575-76]. This finding is based on a doctor's note documenting Ms. Black's report to her physician that she injured her shoulder on May 10, 2011—her alleged onset date—by sawing branches and throwing lumber over a fence [R. 491]. This report does not suggest that Ms. Black performed any heavy yardwork post-disability, and the Commissioner points to nothing in the record in defense.

The court has examined the administrative decision holistically even without the Commissioner's aid. The administrative decision also identified improvement with Ms. Black's shoulder post-surgery in August 2011 as another reason to discount Dr. Genest's sedentary work opinion [R. 573, 575], but improvement alone won't preclude a finding of disability, for there "can be a great distance between a

6

patient who responds to treatment and one who is able to enter the workforce," *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011), or at a particular level. Indeed, even the ALJ acknowledged that Ms. Black's shoulder pain lingered and required a steroid injection in 2012 [R. 528-29, 573]. The administrative decision leaves unexplained why this lingering pain and limitation—despite improvement—proves inconsistent with a sedentary limitation.

Looking still for that logical bridge for discounting this opinion, the court on its own notes that the administrative decision also calls Dr. Genest's opinion inconsistent with the medical record [R. 575]. The administrative decision leaves open to interpretation whether this means the three reasons that now have been shown as unsustaining (and that follow this remark in the same paragraph of the decision) [R. 575], or whether it intends to mean the prior discussion for why Dr. Genest's other opinion—that Ms. Black meets the criteria of Listing 4.04 [R. 574-75]—should not be credited.

The court has independently reviewed this discussion, not challenged by Ms. Black on appeal, and which rather impressively marshals reasons for why Dr. Genest's Listing 4.04 opinion might not be worthy of great weight, including its inconsistency with certain medical records and findings. Perhaps in this discussion there might be reason for carryover to discount the sedentary work opinion, but neither the administrative decision nor the Commissioner's brief on appeal explains what that might be, and the court won't make arguments for the Commissioner. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010). Without a logical bridge, and without aid to explain why that bridge exists, the court has no choice but to remand. Treatment of Dr. Genest's sedentary work opinion may alter the ALJ's assessment of the evidence and ultimate finding—a task left entirely to the ALJ. *See Roddy*, 705 F.3d at 636.

Ms. Black next argues that the administrative decision failed to construct a logical and accurate bridge from the evidence to some of the limitations in the RFC. "Residual functional capacity ('RFC') is an assessment of an individual's ability to do sustained work." *Jarnutowski v. Kjakazi*, 48 F.4th 769, 773 (7th Cir. 2022). The strength functions an ALJ must consider include "lifting, carrying, sitting, standing,

7

walking, pushing, and pulling." *Id.* "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). "[A]n ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ. [The] ALJ [] must connect the evidence to the conclusion through an accurate and logical bridge." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).

Ms. Black argues that there is scant explanation for the ALJ's conclusion that Ms. Black could stand or walk for four hours in an eight-hour workday [*see* R. 575]. The ALJ rested this limitation on the fact that Ms. Black could shop for two hours a day [R. 575]. But the record doesn't logically support such an inference. In a function report directed to the SSA, Ms. Black reports that the only shopping she does is a grocery trip once every two weeks and that it takes two hours to accomplish this shopping trip [R. 201]. A two-hour shopping trip once every two weeks—two hours in 336 hours—doesn't translate to four hours every workday. The administrative decision thus places "undue weight" on Ms. Black's limited ability to "shop for groceries" to assess her "ability to hold a job outside the home." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); *see also Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) ("failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week").

The administrative decision also says there is no evidence she would not be capable of standing or walking for four hours in a normal workday [R. 575], but this is different than saying there is evidence that she could. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("[W]e do not know on what basis he decided that [the claimant] can stand for two hours at a time. No physician said that. . . . To suppose that [the claimant] could do so day after day on a factory floor borders on the fantastic, but in any event has no evidentiary basis that we can find."). Once more, the court has reviewed the entire

8

administrative decision and finds nothing overt that supports this finding. The Commissioner likewise offers no counterpoint to this issue in appeal briefing and cites no medical opinion, record, or other evidence as support for the finding. The administrative decision mentions a consultative examination by Dr. Shoucair, albeit before the onset date, that showed Ms. Black could stand and walk, but it says nothing about the duration of either ability [R. 419-24, 572].

This error seems compounded by the fact that the administrative decision acknowledges Ms. Black's fatigue but never addresses whether this limitation has been accounted in her assessed ability to stand or walk fours hours in a workday and thereby accounted in the RFC. The ALJ must analyze subjective claims of fatigue and must "articulate h[er] reasons for rejecting them." *Myles v. Astrue*, 582 F.3d 672, 676-77 (7th Cir. 2009). The administrative decision need not touch on every little piece of evidence, though certainly lines of evidence. *See Eakin v. Astrue*, 432 F. Appx. 607, 611 (7th Cir. 2011). Ms. Black cites two medical records—one from June 2011 and one from August 2011—referencing her fatigue [R. 489, 548]. Ms. Black additionally testifies that she gets "very fatigued very fast," and even since the 2011 time period she can remain on her feet for 10-15 minutes before she must sit down [R. 672]. She likewise reports fatigue from several medications—noted but seemingly unaccounted in the administrative decision [R. 229, 569]. If in fact credible, her fatigue could factor into the assessment of her ability to walk or stand, including for how long, not least when the administrative decision appears to want to account as well for her stenosis of the coronary artery and chest tightness.

Similarly, the administrative decision lacks a logical bridge for setting Ms. Black's manipulative limitation—namely that she could occasionally reach overhead with the right upper extremity but could frequently reach in other directions with the right upper extremity, as well as frequently handle and feel [R. 568]. Ms. Black argues that the limitation should match her testimony that she cannot reach as high with her right arm as her left without experiencing pain, that she cannot have her arms over her head,

9

and that she had to use her left hand to pick up something on the ground [R. 676]. The administrative decision briefly mentions Ms. Black's testimony on this matter [R. 570].

The administrative decision cites three reasons for the manipulative limitation—but all seem problematic. First, it cites her improvement post-shoulder surgery in August 2011, but improvement alone isn't enough, *see Scott*, 647 F.3d at 739, particularly when her pain lingered and even required a steroid injection in 2012 [R. 528-29, 573]. Second, the decision says Ms. Black performed yardwork post-disability [R. 575], but that proves unhelpful once more when the yardwork contributed to the alleged disability rather than occurred afterwards [R. 491]. Third, the decision notes that Ms. Black crocheted [R. 575], though this occurred just once per week with Ms. Black having trouble sitting long enough to finish a project [R. 569]. Without substantial evidence or a logical bridge that ties rather infrequent activity to the ability to handle and feel frequently in occupations such as hand packager, small products assembler, and mail clerk [R. 579], the decision cannot avoid remand. *See Carradine*, 360 F.3d at 755.

Ms. Black last contests the administrative decision's handling of her subjective complaints—an issue the court need not address on appeal because the other bases for remand, affording the task as the law does to the ALJ to consider and weigh the evidence together, may cause some reassessment of these subjective complaints. Whether they do, the court leaves entirely to the ALJ.

## CONCLUSION

Accordingly, the court GRANTS Ms. Black's request for remand [17] and REMANDS the Commissioner's decision.

SO ORDERED.

September 29, 2023                            *s/ Damon R. Leichty*
                                                           Judge, United States District Court